**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SCHWEIGERS, INC., Respondent.**

**No. 71–1054.**

United States Court of Appeals, Eighth Circuit.

Dec. 28, 1971.

Joseph E. Mayer, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, John D. Burgoyne, Atty., N.L.R.B., for petitioner.

James C. O'Neill, Kelley & O'Neill, Saint Paul, Minn., for respondent.

Before VAN OOSTERHOUT, HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

The National Labor Relations Board petitions this Court for enforcement of its order against Schweigers, Inc. The Board's decision and order are reported at 185 N.L.R.B. No. 55, 75 L.R.R.M. 1541 (1970).

In 1964, the Machinists' Union was certified as the bargaining agent for Schweigers' production and maintenance employees. The Company and the Union negotiated three successive one-year contracts, the last of which expired on March 31, 1969. They were unable to agree on a new agreement, and the Union called a strike on April 23, 1969. Eleven of the sixteen employees in the bargaining unit initially participated in the strike. The Company continued to operate with the non-striking employees and additional personnel it hired after the strike began.

On May 13, the Union filed unfair labor practice charges alleging that Schweigers had refused to bargain in good faith and that it had unlawfully discharged strikers.

On July 16, the Company, the Union and the Regional Director of the National Labor Relations Board executed a settlement agreement whereby the Company agreed to bargain in good faith and to offer immediate reinstatement to all employees who engaged in the strike upon their unconditional application to return to work. Following execution of the agreement, the Company reinstated the strikers on its records as employees and considered them as employees although they remained on strike.

The Company and the Union resumed negotiations. On November 4, the Company stated that it felt that "the Union no longer represents a majority of the employees," and that it was under no further obligation to bargain and was, therefore, withdrawing recognition from the Union.

The Company followed the oral statement by a letter dated November 7. It stated in part:

"In addition, it is apparent to us that the Union no longer represents a majority of the employees. We have 9 full-time and 7 regularly scheduled part-time employees, and there are only 10 strikers not working. This employment situation was directly caused by your decision to strike us on April 23, and by our similar desire to continue in operation. While both of us exercised our legal rights, you have, as a result, lost your majority status as representative of our employees. Under these circumstances, and as evidence of our good faith in this matter, we are petitioning the National Labor Relations Board for an election to resolve this question."

On November 12, the Company filed a petition for an election.

On November 29, the Union wrote the Company a letter modifying its demands. The Company did not reply.

On December 18, the Regional Director set aside the settlement agreement and issued a new complaint alleging (1) that the Company had negotiated in bad faith with no intention of reaching an agreement, (2) that the Company had refused to negotiate with respect to job classifications, merit ratings and certain fringe benefits, (3) that the Company had failed to meet at reasonable times, and (4) that the Company had unlawfully withdrawn recognition from the Union.

The Regional Director also dismissed the petition for an election. The Company did not appeal from the dismissal.

The Trial Examiner found that Schweigers had bargained to an impasse on all issues and that it was not, therefore, guilty of a refusal to bargain on wage and fringe benefit issues. He further found that Schweigers had met at reasonable times for contract negotiation. But he found that Schweigers had violated § 8(a) (1) and (5) of the National Labor Relations Act by withdrawing recognition from the Union on November 4. He stated:

"In the Examiner's opinion, [Schweigers'] position is foreclosed by the settlement agreement, in which [it] made an unqualified commitment to 'offer immediate reinstatement' to all the strikers 'upon their unconditional application to return to work.' As recently as September 24, in a compliance report to the Board, [Schweigers] had recognized this continuing obligation in the following terms:

" 'The personnel records of Schweigers, Inc. have been changed so the employees who went on strike have been changed from 'Voluntary Quit' to 'Current Employee.' . . . If any or all employees on strike ask for work, he or they will be immediately put to work.'

"Thus [Schweigers] had waived any right it might have had to replace the strikers permanently. Without litigating the question of the nature of the strike, [Schweigers] had, in effect, agreed to give the strikers the

status of unfair-labor practice strikers. Since [Schweigers] by the settlement had, in effect, agreed to consider the strike as an unfair-labor-practice strike, 'the Company is precluded from relying on the number of replacements hired during (the) strike as evidence rebutting the presumption of continuing majority status.' N. L. R. B. v. Frick Co., [423 F.2d 1327 (3rd Cir. 1970)].

"In addition, the record totally fails to support a contention that the strikers have been permanently replaced. * * * On the contrary, on questioning by the Examiner, Teipel [a Company labor relations consultant] clearly indicated that at least the 7 part-time employees were hired temporarily. In this connection, his testimony was, in part:

" ' . . . We hope(d) the strike would be resolved and we attempted to get it resolved and if it did then these men would be, of course, back at school and so on, so I would say that we did not originally hold them as men who were being hired on a permanent basis.'

*    *    *    *    *    *

" 'TRIAL EXAMINER: Do you know whether they were told that this was a temporary job, ·in effect, pending resolution of the company's problems?'

" 'THE WITNESS: I think this was pretty well understood. These were men who were only here at the vocational school and graduating and moving on, and those that were hired in, say April, many of them graduated in May or June and it was obvious that they would not continue even to reside here.'

"While Teipel disclaimed intimate knowedge of [Schweigers'] operations, his testimony remains uncontradicted, since no other evidence was adduced on this issue."

The Examiner recommended that Schweigers be ordered to cease and desist from refusing to recognize the Union, and to post appropriate notices. He further recommended that the settlement agreement be reinstated, and that the case be held in abeyance pending an invitation to dismiss the complaint upon full compliance by Schweigers.

The National Labor Relations Board adopted the findings, conclusions and recommendations of the Examiner without change.

Schweigers contends on appeal that the Board erred in holding that the Company had waived its right to replace the strikers permanently, and that it further erred in finding that the Company had not met its burden of proving that the strikers had in fact been permanently replaced.

We enforce the Board's order with exceptions for the reaons set forth below.

■ The Company was obligated by the settlement agreement to offer unconditional reinstatement to the ten employees who remained on strike as of the date of that agreement. It was required to take the ten employees back even though it might have had to discharge replacements to make room for them. Mastro Plastic Corporation v. N. L. R. B., 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956). Schweigers may have fulfilled its obligation to the ten strikers by unconditionally offering to reinstate them and by keeping the offer open for a reasonable period of time. D'Armigene, Inc., 148 N.L.R.B. No. 2, 56 L.R.R.M. 1456 (1964), enf'd as modified, 353 F.2d 406 (2nd Cir. 1965). But then, it committed further unfair labor practices which prolonged the strike and the strikers again were entitled to the status of unfair labor practice strikers.

■ Schweigers claims that it was justified in withdrawing recognition from the Union on November 4 on the grounds that, on that date, it employed

nine full-time employees and seven part-time employees hired during the strike, while only ten employees remained on strike. It argues that the seven part-time employees were eligible to participate in the determination of the Union's representative status. We cannot agree. The Board found, on the basis of Teipel's testimony, that the seven part-time employees were not intended as permanent replacements. It follows that the Union represented a majority of the employees on November 4, and that Schweigers had no reasonable grounds for believing to the contrary. There is no evidence on this record to support any other finding on this issue. The presumption that replacements for economic strikers are permanent employees and eligible to participate in any determination of who represents the employees. Pacific Tile and Porcelain Co., 137 N.L.R.B. No. 553, 50 L.R.R.M. 1394 (1960), was effectively rebutted by the uncontradicted testimony of Schweigers' Labor consultant, Teipel.

■ Under these circumstances, the Board's order deserves enforcement. We make it clear, however, that Schweigers can fulfill its obligation under the order by completely purging itself of its unfair labor practices by fully complying with the Board's order. If it does comply and if it does offer unconditional reinstatement to all of the ten striking employees, it can fulfill its obligation by keeping the offer of reinstatement open for a reasonable period of time which, under the circumstances of this case, we feel would be thirty days. Thereafter, the employees can, of course, continue their strike; but if they do so, they retain only those rights that are generally available to economic strikers, absent of course further unfair labor practices on the part of Schweigers.

The Board's order will be enforced as modified by this opinion.

Costs will be taxed against Schweigers, Inc.