**BIO–SCIENCE LABORATORIES,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent.**

No. 74–2800.

United States Court of Appeals,
Ninth Circuit.

Aug. 18, 1976.

Robert E. Williams (argued), Washington, D. C., for petitioner.

Joseph A. Oertel (argued), NLRB, Washington, D. C., for respondent.

Before CHAMBERS and GOODWIN, Circuit Judges, and SCHNACKE,* District Judge.

CHAMBERS, Circuit Judge:

In late 1966, the laboratory and related employees of Bio-Science, a medical reference laboratory, designated the International Chemical Workers Union, Local 805, as their bargaining agent.

While still covered by the 1970 basic contract, the Union and Bio-Science reached an impasse over a wage reopener, and on March 15, 1972, the employees went on strike. During the strike, Bio-Science eliminated some of the positions held by the strikers and hired permanent replacements for some others. On April 9, 1972, the strike ended. Those employees whose positions were vacant returned to work. The other strikers were put on a preferential reinstatement list. Several persons on the preferential reinstatement list were offered reinstatement between April and December of 1972. Some accepted while others declined and were eliminated from the list.

On December 29, 1972, Bio-Science filed a petition for an election to determine if the bargaining unit wished to retain the Union as its representative. A secret ballot election was held on February 22, 1973. Thirty-seven persons on the preferential reinstatement list were allowed to cast challenged ballots after Bio-Science challenged their right to vote. The challenged ballots were sufficient in number to affect the outcome of the election. The Regional Director issued a report recommending that all challenged votes be counted. Bio-Science appealed to the Board, which remanded the matter to the Director for a hearing on whether the voters in fact retained an interest in returning to work with Bio-Science.

After the hearing, the hearing officer held that the evidence presented by Bio-Science was insufficient, in all but three cases,

* The Honorable Robert H. Schnacke, United States District Judge for the Northern District of California, sitting by designation.

to rebut the presumption that the employees remaining on the list would wish to return to their jobs. Further, the hearing officer relied on former strikers' affirmative responses to letters sent out by Bio-Science to those on the preferential reinstatement list inquiring whether they were still interested in returning to their jobs. The Board affirmed the hearing officer's determination except to disqualify one additional voter.

After the Board's review of the challenges, the thirty-three votes were counted and, when added to the other votes, made a majority in favor of Union representation. The Regional Director certified the Union as the bargaining agent for the employees, but Bio-Science refused to bargain. The Board granted summary judgment against Bio-Science on the resultant unfair labor practice complaint.

Bio-Science contends that its refusal to bargain was proper since the certification of the Union by the Board was contrary to law because the Board incorrectly rejected petitioner's challenges to the thirty-three ballots. First, it is argued that the former strikers on the reinstatement list were not, as a class, eligible to vote. Second, petitioner argues that the evidence does not support a determination that the thirty-three voters were still interested in returning to work with petitioner and that the presumption employed in this regard was unwarranted.

Generally, the right to vote in a representation election has been limited to employees both hired and working on the eligibility date. *NLRB v. Family Heritage Home-Beaver Dam, Inc.,* 491 F.2d 347 (7th Cir. 1974). Section 9(c)(3) of the National Labor Relations Act [29 U.S.C. § 159(c)(3)], provides in relevant part:

> Employees engaged in an economic strike who are not entitled to reinstatement shall be eligible to vote under such regulations as the Board shall find are consistent with the purposes and provisions of this Act in an election conducted within twelve months after the commencement of the strike.

The strikers, while on strike and while on the list, remained employees of the petitioner. *Laidlaw Corp. v. NLRB,* 414 F.2d 99 (7th Cir. 1969). See also *NLRB v. Fleetwood Trailer Co.,* 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967). The question of their right to vote under 9(c)(3) revolves around the meaning of the term "[e]mployees engaged in an economic strike." Bio-Science argues that this phrase limits the right to vote granted by 9(c)(3) to employees currently actively engaged in a strike. The Board argues that the phrase refers to employees actively on strike and those on a preferential reinstatement list following a strike, so long as the election occurs within twelve months of the beginning of the strike. We find no case law directly on point. The Fifth Circuit has held that employees who are on a preferential reinstatement list remain part of the bargaining unit for the purpose of determining continued majority status of the Union but did not reach the narrower issue of their right to vote in a formal representation election. *C. H. Guenther and Son, Inc. v. NLRB,* 427 F.2d 983 (5th Cir. 1970).

The legislative history of this provision, which alters an earlier 1947 amendment of the National Labor Relations Act, gives no determinative explanation. It does, however, provide the reason for the enactment of the 1959 amendment and the rationale behind it. The prior provision, as amended in 1947, had forbidden strikers who were not entitled to reinstatement from voting in a representation election. The result was that employers could provoke a strike, hire replacements, petition for an election and, since only replacements could vote, be reasonably assured that the union would be voted out. See Senate Report, Labor-Management Act of 1959, 1959 U.S.Code Cong. & Admin.News, pp. 2348–49. The 1959 amendment was made to the statute to limit the potential for "union busting" in this manner.

Absent a definition from Congress, we must interpret the provision in a manner that will advance the congressional pur-

pose behind the amendment. "Union busting" by a representation election when the employees are disenfranchised because of a strike would occur equally under prior law where the employees are actively out on strike or where they ended the strike but are on a preferential reinstatement list. In either case, the employer could have eliminated the Union as the bargaining agent by the voting of permanent replacement employees, hired as a result of the economic strike, while the strikers are unable to vote. It was precisely this evil that the 1959 amendment to 9(c)(3) was designed to avoid. If the employees are not allowed to vote either because they are on strike or because they are on a reinstatement list, the danger of this kind of tactic is present. We, therefore, hold that section 9(c)(3) of the National Labor Relations Act gives economic strikers the right to vote in a representation election held within twelve months after the beginning of the strike either if they are currently actively on strike and not entitled to reinstatement or they are on a preferential reinstatement list as a result of an economic strike.[1]

 The second allegation of error is that the evidence produced at the hearing does not support the determination of the Board that the challenged voters retained their interest in returning to work and that the presumption applied in this regard was unwarranted. Economic strikers lose their voting eligibility if they demonstrate an intention to abandon an interest in their struck job. In *Pacific Tile and Porcelain Co.*, 137 N.L.R.B. 1358 (1962), the Board announced that due to inherent difficulties in determining the intent of strikers to return to their former work or not, it would be presumed that such employees were interested in returning and the party challenging their vote would have to prove otherwise. This presumption has been upheld by several reviewing courts. See, e. g., *NLRB v. Schweigers, Inc.*, 453 F.2d 255 (9th Cir. 1971); *Trailmobile Division, Pullman,*

*Inc. v. NLRB,* 379 F.2d 419 (5th Cir. 1967). Under the record in this case, applying this presumption, we find that the evidence supports the Board's determination that the challenged voters retained their interest in returning to work with the petitioner and were eligible to vote. The order of the Board will be enforced.

---

1. We find this interpretation to be that most consistent with the Fifth Circuit's holding in *Guenther.* It would be anomalous to hold that former strikers on a reinstatement list are to be counted for the purpose of determining union majority status except when there is a formal representation election.