578 F.2d 1304
 99 L.R.R.M. (BNA) 2503, 84 Lab.Cas. P 10,767
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ADRIAN BELT COMPANY, Hollywood Leather Creations, Harry
Goldberg Belt Company, Inc., Jolie Belts, Inc.,
Mahler Sales Co., Inc. and Patricia Belt
Company, Respondents.
 No. 76-3422.
 United States Court of Appeals,
Ninth Circuit.
 July 27, 1978.
 
 Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., for N. L. R. B.
 Stephen A. Mazurak, of Rexon & Mazurak, Los Angeles, Cal., for respondents.
 On Application for Enforcement of an Order of The National Labor Relations Board.
 Before CHAMBERS and HUG, Circuit Judges, and FERGUSON,* District Judge.
 PER CURIAM:
 
 
 1
 The National Labor Relations Board, pursuant to § 10(e) of the National Labor Relations Act (29 U.S.C. § 151, et seq.), has applied for enforcement of its order (224 NLRB No. 167) finding that the respondent companies violated §§ 8(a) (5) and (1) of the Act by refusing to bargain with the union[1] which had been certified by the Board as the exclusive bargaining agent for the respondents' employees. This court has jurisdiction over the proceedings because the alleged unfair labor practice occurred in Los Angeles where respondents conduct their manufacturing operations. We grant the application for enforcement.
 
 
 2
 The respondents, as members of the California Apparel Accessory Association, Inc., have been bound by a series of master collective bargaining agreements with the union. The latest agreement expired in October, 1974. In July, 1974, the respondents, seeking to determine whether the union still represented a majority of their employees, filed representation petitions with the Board. The Regional Director then ordered that a secret ballot election be conducted in the appropriate bargaining unit.[2] The election was held in November, 1974, and resulted in 42 votes for the union and 36 against. In addition, there were 11 challenged ballots, a sufficient number to affect the results of the election. As a further challenge to the election the respondents filed objections charging that improper conduct by union representatives had affected the voting.
 
 
 3
 After investigation of both the ballot challenges and the objections, the Regional Director issued a supplemental decision and order in which he
 
 
 4
 (1) sustained the union's challenges to the ballots of Luis Beltran and Robert Garcia on the ground that they were supervisors and were therefore not included in the bargaining unit,
 
 
 5
 (2) overruled the challenge to the ballot of Beatrice Polanco on the ground that as a plant clerical employee she shared a community of interest with the unit employees and was therefore entitled to vote,
 
 
 6
 (3) directed that a hearing be held on the question of Yvonne King's eligibility to vote in the event that her ballot became determinative,
 
 
 7
 (4) overruled the union's challenges to 7 other ballots, and
 
 
 8
 (5) overruled all of the respondents' charges of improper conduct.
 
 
 9
 The respondents filed a request for review with the Board, claiming that the Regional Director erred in his rulings regarding Beltran, Garcia, Polanco and King. No review was sought with respect to the other rulings of the Regional Director. The Board denied the respondents' request on the ground that it raised no substantial issues warranting review. Thereafter, the Regional Director issued a revised tally of ballots showing 43 votes for the union and 43 against, thereby making Yvonne King's ballot determinative.
 
 
 10
 Pursuant to the earlier order of the Regional Director, a hearing was then held to resolve the issue of King's eligibility. Her ballot had been challenged by the Board agent who supervised the election because her name did not appear on the eligibility list submitted by her employer. The employer contended that King had been terminated prior to the election; the union contended that she was merely on a leave of absence and that she should properly be considered an employee for purposes of the representation election. The hearing officer held that the union's position was correct and that King was eligible to vote.
 
 
 11
 Following the hearing the Regional Director issued his second supplemental decision and order wherein he adopted the hearing officer's findings and accordingly overruled the objection to King's ballot. Respondents filed a request for review with the Board regarding the decision; however, the Board again denied the request on the ground that it raised no issue warranting review. The Regional Director, after counting King's ballot, then issued a second revised tally showing 44 votes for the union and 43 against. Thereafter, in November, 1975, the Director certified the union as the exclusive representative of the respondents' employees in the designated unit.
 
 
 12
 Following its certification, the union requested the respondents to bargain collectively for the purpose of negotiating a new contract. The respondents, however, refused to enter into negotiations with the union. In December, 1975, the union filed an unfair labor practice charge alleging that the respondents' failure to bargain constituted a violation of Sections 8(a)(5) and (1) of the Act. In their answer to the charge the respondents admitted their refusal to bargain and challenged the validity of the union's certification on the same grounds raised in their requests for review in the prior representation proceedings.
 
 
 13
 Upon motion by the General Counsel, the Board granted summary judgment against the respondents on the grounds that the issues raised in the unfair labor practice proceeding had been litigated and determined adversely to them in the earlier proceedings; that they had not offered any newly discovered evidence or specific circumstances warranting reexamination of the prior rulings; and that, therefore, there were no material issues which were properly litigable in the unfair practice proceeding. Accordingly, the Board found the companies in violation of §§ 8(a)(5) and (1) and ordered them to bargain with the union. The respondents have filed the instant appeal from that order.
 
 
 14
 On this appeal, the respondents once again raise the issues addressed in their petitions for review in connection with the representation proceedings.[3] If the Board's certification of the union was proper, then the respondents' refusal to bargain violates the Act, and the Board's order must be enforced. The validity of the certification depends, in turn, upon the correctness of the Board's rulings regarding the four challenged ballots of Beltran, Garcia, Polanco and King.
 
 
 15
 The standard of review under which we must judge the propriety of the Board's decisions is a limited one. As stated recently by this court:
 
 
 16
 "(T)he Board is presumed to have a certain expertise in conducting and evaluating elections; its decisions should be deferred to unless it has committed an abuse of discretion. Findings of fact should be conclusive if supported by substantial evidence." Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
 
 
 17
 Hecla Min. Co. v. N.L.R.B., 564 F.2d 309, 313 (9th Cir. 1977). Accordingly, we must consider each of the relevant rulings and determine whether the findings and conclusions of the Board are fairly supported by the record.
 
 
 18
 1. Yvonne King.
 
 
 19
 The issue raised by the challenge to Yvonne King's ballot relates to her status as an employee at the time of the election. Under Board rules, eligibility to vote in a representation election is dependent upon employment in the designated bargaining unit during the eligibility period and on the date of the election. Westchester Plastics of Ohio, Inc. v. N.L.R.B., 401 F.2d 903, 907 (6th Cir. 1968); See N.L.R.B. v. Pacific Gamble Robinson Co., 438 F.2d 112 (9th Cir. 1971). Employees on layoff or leave of absence during the relevant period, who have not quit or been terminated and who have a reasonable expectation or recall, qualify as eligible voters because of their continued ties to the employee unit. American Motors Corporation, 206 NLRB 287, 291 (1973); Miami Rivet Company, 147 NLRB 470, 483 (1964). A worker on a leave of absence continues to be regarded as an employee unless it is established by overt action or clear communication that the employment relationship has been terminated. Trailmobile Division, Pullman, Inc. v. N.L.R.B., 379 F.2d 419 (5th Cir. 1967). Cf. N.L.R.B. v. Pacific Gamble Robinson Co., supra; Bio-Science Laboratories v. N.L.R.B., 542 F.2d 505 (9th Cir. 1976).
 
 
 20
 The Board found that Yvonne King was an employee of respondent Harvey Goldberg Belt Company, Inc., on leave of absence status at the time of the election, and that she was therefore qualified to vote. The respondents challenge the Board's decision on the grounds that it is not supported by substantial evidence and that the Board erred in refusing to seek enforcement of a subpoena to obtain records regarding King's applications for unemployment benefits.
 
 
 21
 A. Sufficiency of the Evidence.
 
 
 22
 The transcript of the hearing conducted to resolve the question of King's eligibility consists of five hundred and thirteen pages. Evidence presented at the hearing established the following facts:
 
 
 23
 (1) Yvonne King had worked as a floor girl for Harry Goldberg Belt Co. since 1970.
 
 
 24
 (2) The rate of turnover at the company was very high, and King was one of the most experienced employees in the shop.
 
 
 25
 (3) Her employer's volume of business fluctuated widely, resulting in frequent layoffs.
 
 
 26
 (4) Floor lady Adelaine Fontes, because of her skill in the employer's belt making process and her fluency in English and Spanish, acted as the communications link between the employer and its employees. Fontes relayed messages between the employees and management concerning layoff and recall and told employees when to report for work. She was also involved in hiring, and she gave other employees approval for requested time off.
 
 
 27
 (5) On August 15, 1974, Fontes told King not to come to work on the following Monday and that because work was slow she was being laid off.
 
 
 28
 (6) On August 20, 1974, King entered a hospital for surgery and remained there until August 27.
 
 
 29
 (7) On August 25, Fontes called King at the hospital and asked why she had not indicated that she was going to the hospital. King replied that at the time of her layoff she had not known that she was to be hospitalized. Fontes told King that she had taken off work at the right time because work was slow.
 
 
 30
 (8) Following her release from the hospital King was advised by her doctor not to return to work until October 21. As of that date, however, she still did not feel well enough to work and had made appointments for further medical treatment.
 
 
 31
 (9) On election day, November 8, King returned to her employer's plant and announced her desire and ability to return to work and vote in the election. While she was standing in line to vote, Fontes told her that there was no work at that time and suggested that she continue to draw disability or unemployment benefits.
 
 
 32
 (10) On the following day, November 9, King telephoned her employer. She talked briefly with Fontes and then spoke with Harry Goldberg, the owner of the company. King asked Goldberg whether there was any work for her, but Goldberg told her that he had replaced her with someone else. The conversation then ended, and King did not have any further contact with the employer.
 
 
 33
 Respondents contend that the evidence fails to support the Board's finding that King retained her employee status on the date of the election. Specifically, they argue that King's failure to comply with her employer's requirement that laid off employees call in each day to see if work was available precluded a finding that she had a reasonable expectation of recall. However, the Board concluded that King's violation of the call-in rule was not a determining factor regarding her status, and the record supports that conclusion. Apparently, the rule was not strictly observed by the employer. Employees who failed to call in were not immediately terminated, and on some occasions it was the employer who contacted the employees to tell them to return to work.
 
 
 34
 Furthermore, the Board specifically found that when Fontes called King at the hospital the effect of the conversation was to place King on a leave of absence rather than layoff status, thus eliminating the need to call in daily. The evidence indicates that Fontes had the ostensible authority to do so and that King understood that to be the situation. At no time until after the election did the company contend that King had been terminated because of the call-in rule, and Fontes' conversation with King on the day of the election suggests that at that time King was not regarded as having severed her employment to the bargaining unit. Certainly the Board was justified in finding that there had been no "clear communication" of termination, and that King was therefore eligible to vote in the representation election.
 
 
 35
 B. Enforcement of Subpoenas.
 
 
 36
 In connection with the evidentiary hearing regarding King's eligibility the respondents served subpoenas on two California state agencies requesting the production of all documents and records concerning King's application for disability and unemployment benefits. Representatives from the agencies appeared at the hearing but declined to produce the documents on the ground that the California Unemployment Insurance Code made such records confidential.[4]
 
 
 37
 The hearing officer and the Regional Director rejected respondents' application for enforcement of the subpoenas, and the Board declined the employers' request for review. The respondents now claim that the Board's failure to seek enforcement of the subpoenas constituted prejudicial error in the conduct of the eligibility proceedings.
 
 
 38
 We find this contention to be without merit. The Board's decision regarding the enforcement of subpoenas is a discretionary one.[5] In this case, the state agencies asserted a specific statutory privilege against disclosure of the subpoenaed materials, and the courts have recognized that such a claim may constitute a valid reason for the Board to revoke or to decline to enforce a subpoena.[6]
 
 
 39
 Furthermore, the hearing examiner concluded that, in view of the fact that different considerations govern the determination of employment status for benefit purposes than for NLRB election purposes, the probative value of the requested material would have been minimal. That conclusion is also supported by the fact that most of the agency records were not prepared until after King had been notified of her termination on the day following the election. Respondents concede that the only possible value of any evidence derived from the records would have been for impeachment purposes, yet no effort was made at the hearing to establish a foundation for any inconsistency in King's testimony.[7] Therefore, the respondents cannot claim to have been prejudiced by their inability to obtain the records. See N.L.R.B. v. Heath Tec Division/San Francisco, 566 F.2d 1367 (9th Cir. 1978). Under these circumstances, the Board was justified in concluding that further litigation to contest the claim of privilege and seek enforcement of the subpoenas was not warranted.
 
 
 40
 2. Luis Beltran and Robert Garcia.
 
 
 41
 The union's challenges to the ballots of Luis Beltran and Robert Garcia were sustained on the ground that they were supervisors within the meaning of Section 2(11) of the Act[8] and that they were therefore ineligible to vote in the representation election.[9] The respondents contest that finding and argue that the Board erred in deciding the eligibility of Beltran and Garcia without conducting an evidentiary hearing. We conclude that the Board's action in sustaining the challenges was proper.
 
 
 42
 The N.L.R.B. regulations governing representation election procedures permit the Board to decide questions of the eligibility of challenged voters through an administrative investigation. A hearing need not be conducted unless the Regional Director determines "in the exercise of his reasonable discretion" that there are "substantial and material factual issues" which might more appropriately be resolved after a hearing. 29 C.F.R. § 102.69(d). The party seeking a hearing has the burden of demonstrating the existence of such factual issues by supplying prima facie evidence in support of his contentions and by specifically identifying the disputed issues. Mere conclusory statements are insufficient to support a request for a hearing. See N.L.R.B. v. Aaron Bros. Corp., 563 F.2d 409 (9th Cir. 1977); N.L.R.B. v. Decoto Aircraft, Inc., 512 F.2d 758 (9th Cir.), Cert. denied, 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975).
 
 
 43
 Furthermore, the Board's conclusions that Garcia and Beltran were supervisors within the meaning of Section 2(11) are entitled to particular weight by a reviewing court because such determinations involve the Board's " special function of applying the general provisions of the Act to the complexities of industrial life." N.L.R.B. v. Erie Resistor Corp., 373 U.S. 221, 236, 83 S.Ct. 1139, 1150, 10 L.Ed.2d 308 (1963). Deference to the Board's expertise is particularly appropriate in cases involving Section 2(11) since that section requires that distinctions be drawn between gradations of authority "so infinite and subtle that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who as a practical matter fall within the statutory definition of a 'supervisor.' " Marine Engineers Beneficial Ass'n v. Interlake Steamship Co., 370 U.S. 173, 179 n. 6, 82 S.Ct. 1237, 1240, 8 L.Ed.2d 418 (1962). See Laborers & Hod Carriers v. N.L.R.B., 564 F.2d 834, 837 (9th Cir. 1977); Kaiser Engineers v. N.L.R.B., 538 F.2d 1379, 1383-4 (9th Cir. 1976); N.L.R.B. v. Metropolitan Life Ins. Co., 405 F.2d 1169, 1172-3 (2d Cir. 1968).
 
 
 44
 With regard to the eligibility of Beltran, the respondents clearly failed to establish the need for a hearing. The evidence developed in the Board's investigation showed that Beltran was one of five persons employed by Jolie Belts, Inc. and that, whenever the owners were away from the plant, Beltran would be left in complete charge of the work. Even when the owners were present Beltran would direct other employees in their work, train new personnel, and answer employees' questions about their work. He was paid a salary which greatly exceeded the hourly wages paid to other employees, and in addition he received a commission based upon total shop production. Beltran was not required to punch a time clock, he worked longer hours than the other employees, and he was free to leave the plant without permission. These facts, which were substantially uncontested by the respondents, are unquestionably sufficient to support the Board's finding that Beltran was a supervisor within the meaning of the Act. See N.L.R.B. v. Metropolitan Life Ins. Co., Supra ; N.L.R.B. v. Fullerton Publishing Co., 283 F.2d 545 (9th Cir. 1960).
 
 
 45
 The propriety of the Board's determination of Garcia's status presents a somewhat closer question because the evidence developed during the administrative investigation was not without conflicts. In particular, the respondents argue that the investigation revealed a material factual dispute as to whether or not Garcia had been introduced to other employees as a foreman, and that a hearing should have been conducted to resolve the issue. Viewing the record as a whole, however, we are convinced that this conflict in the evidence was not sufficient to raise a substantial question as to Garcia's status. There is ample independent and essentially undisputed evidence, apart from the question of Garcia's being introduced as a foreman, which fully supports the Board's conclusion that Garcia was a supervisor.
 
 
 46
 The administrative investigation established that Garcia was one of ten workers at respondent Adrian Belt Co. Although he was paid as an hourly employee, Garcia was responsible for the direction of most of the work at the plant during the owner's absence, and as part of his regular duties he directed the work of three delivery employees. Garcia had the duty of opening and locking up the shop each day. In addition, he was responsible for instructing and reassigning employees when special rush orders were received. Because the owner did not speak fluent Spanish he usually relied on Garcia to convey his instructions to the employees, and Garcia would also attempt to resolve employee questions and grievances before referring them to the owner. These facts sufficiently demonstrate that Garcia exercised a degree of authority which properly classified him as a supervisor. Therefore, we find that the Board did not err in excluding Garcia from the bargaining unit and in sustaining the challenge to his ballot without an evidentiary hearing.
 
 
 47
 3. Beatrice Polanco.
 
 
 48
 Beatrice Polanco's ballot was challenged by the Board agent at the election because her name was not included on the eligibility list. Her employer, Arrow Belt of California, had omitted her name on the ground that she was an Office clerical employee and was therefore excluded from the agreed upon bargaining unit.[10] Based upon an administrative investigation, the Regional Director concluded that Polanco should have been classified as a Plant clerical and that she was eligible to vote as a member of the unit because her duties and job interests were closely aligned with those of the production employees. The Board denied the respondents' request for a hearing and affirmed the decision of the Director. Again, we find that there was substantial evidence to support the Board's ruling and that there was no need for an evidentiary hearing.
 
 
 49
 In determining whether a particular employee is properly included within a designated bargaining unit, a key consideration is whether that employee shares a sufficient "community of interest" with other members of the unit. N.L.R.B. v. Hoerner-Waldorf Corp., 525 F.2d 805, 807 n. 3 (8th Cir. 1975). See Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.,404 U.S. 157, 171-5, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). With regard to Polanco, the Board's investigation established that her primary duties involved the preparation, transfer and maintenance of inventory and production control records for the work of the production employees. Like the production workers, she was paid at an hourly rate, received time and one-half pay for overtime, punched the time clock and took her rest and lunch breaks in the factory area. At times, when business was slow, Polanco would perform production work herself. Based on these facts, the Board could reasonably conclude that Polanco's common interests with the production employees were sufficient to place her within the same bargaining unit. See Amalgamated Meat Cutters, Local 576 v. N.L.R.B., 170 U.S.App.D.C. 316, 516 F.2d 1244 (1975); N.L.R.B. v. Quaker City Life Ins. Co., 319 F.2d 690 (4th Cir. 1963); Container Research Corp., 188 NLRB 586 (1971); Adams Corp., Korn Kurls Div., 172 NLRB 552, 554-5 (1968).
 
 
 50
 In support of their request for a hearing regarding Polanco's eligibility the respondents submitted no evidence other than the affidavit of Lee A. Hooker, the manager of Arrow Belt. The affidavit was brief and was, in most respects, entirely consistent with the Regional Director's findings. No substantial or material issue was raised regarding the facts upon which the Director had based his conclusion that Polanco was a plant clerical worker. Instead, the respondents based their request for a hearing primarily on the contention that the Director had placed too much weight on certain facts and had not sufficiently considered others and that he had misapplied Board precedent.[11] The Board was therefore correct in denying the request for a hearing because the respondents did not meet the burden of establishing the necessity for an evidentiary proceeding. See N.L.R.B. v. Decoto Aircraft, Inc. supra.
 
 
 51
 Having found that there is substantial evidence in support of the Board's findings as to each of the challenged ballots, we conclude that the certification of the union was valid and that the Board properly found that the respondents committed an unfair labor practice by refusing to bargain with the union. Accordingly, the Board's application for enforcement of its order is granted.
 
 
 52
 ORDER ENFORCED.
 
 
 
 *
 Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 Los Angeles Joint Board of the International Ladies Garment Workers Union, AFL-CIO
 
 
 [2]
 The companies stipulated that the following unit was appropriate for collective bargaining purposes:
 All production, maintenance, shipping and receiving employees employed by the employer-members of the California Apparel Accessory Association, Inc., which includes all (the companies), herein; excluding all designers, head shipping clerks, office and clerical employees, salesmen, guards, and supervisors as defined in the Act.
 
 
 [3]
 This is the proper procedure for respondents to follow in order to obtain judicial review of the Board's decisions with respect to the representation election. As a general rule, there is no direct appeal from the Board's rulings in representation proceedings. As in this case, judicial review ordinarily occurs when an employer appeals a subsequent decision of the Board that the refusal to bargain with the certified representative union constitutes an unfair labor practice. Charlie Rossi Ford, Inc. v. Price, 564 F.2d 372, 373 (9th Cir. 1977); Hecla Min. Co. v. N.L.R.B., 564 F.2d 309, 313 (9th Cir. 1977). Cf. Associated Gen. Contractors, etc. v. N.L.R.B., 564 F.2d 271 (9th Cir. 1977)
 
 
 [4]
 California Unemployment Insurance Code § 1094 provides, in pertinent part:
 Except as otherwise specifically provided in this division the information furnished to the director by an employing unit, pursuant to this division, shall be for the exclusive use and information of the director in discharge of his duties and shall not be open to the public, nor admissible in evidence in any action or special proceeding, other than one arising out of the provisions of this division . . .
 Section 2111 makes it a misdemeanor for a department employee to disclose such information "(e)xcept as . . . provided in Section 1094."
 
 
 [5]
 The relevant regulatory provision is 29 C.F.R. § 102.31(d):
 Upon the failure of any person to comply with a subpena issued upon the request of a private party, the general counsel shall, in the name of the Board but on relation of such private party, institute proceedings in the appropriate district court for the enforcement thereof, Unless in the judgment of the Board the enforcement of such subpena would be inconsistent with law and with the policies of the act . . . . (emphasis added).
 See also N.L.R.B. v. Bancroft Mfg. Co., Inc., 516 F.2d 436 (5th Cir. 1975), Cert. denied, 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976).
 
 
 [6]
 See General Engineering, Inc. v. N.L.R.B., 341 F.2d 367, 372-3 (9th Cir. 1965). In Herman Brothers Pet Supply, Inc. v. N.L.R.B., 360 F.2d 176 (6th Cir. 1966), the court upheld an N.L.R.B. trial examiner's decision to quash a subpoena directed to the Michigan Employment Security Commission seeking records similar to those requested here. In refusing to comply with the subpoena, the Michigan agency relied on a confidentiality statute which was considerably less stringent than the California Unemployment Insurance Code provision raised in this case. Nevertheless, the court found no error in the examiner's refusal to enforce the subpoena over the claim of privilege. Cf. Marine Welding & Repair Works, Inc. v. N.L.R.B., 492 F.2d 526 (5th Cir. 1974)
 
 
 [7]
 The employer's counsel never asked King what she had told the agencies about her employment status, although it was specifically suggested at the hearing that he do so. This failure would ordinarily have precluded any use of the agency records to impeach King because no proper foundation was laid. See Rule 613(b), Federal Rules of Evidence; 29 U.S.C. § 160(b) (N.L.R.B. hearings are to be conducted in accordance with the rules of evidence applicable in the district courts)
 
 
 [8]
 Section 2(11) of the Act, 29 U.S.C. § 152(11), provides:
 The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.
 
 
 [9]
 See note 2, Supra
 
 
 [10]
 See note 2, Supra
 
 
 [11]
 Specifically, the respondents asserted that the Director had erred in relying on the fact that another office worker, Irene Jones, had voted without challenge and in discounting the fact that Polanco spent the majority of her time in the office rather than in the factory area