### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### BILLION MOTORS, INC., d/b/a Billion Oldsmobile-Toyota, Respondent.

#### No. 82–1561.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1983.

Decided Feb. 22, 1983.

Berens & Associates, P.C., Kelvin C. Berens, Omaha, Neb., for respondent.

Susan Tepper Papadopoulos, N.L.R.B., Washington, D.C., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, for N.L.R.B.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

PER CURIAM.

The National Labor Relations Board (the Board) petitions this court for enforcement of its order against Billion Motors, Inc., d/b/a Billion Oldsmobile-Toyota (the Company).[1] The Board found that the Compa-

---

1. The Board's decision and order are reported at 260 N.L.R.B. No. 99 (1982).

ny committed unfair labor practices in violation of § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1). The Board further found that the Company's unfair labor practices caused employees of the Company to strike. The Board ordered the Company to reinstate the unfair labor strikers with back pay. The Company argues that the Board's order is contrary to the law and unsupported by substantial evidence and should be set aside. We enforce the order.

This labor dispute arises out of the 1979–80 contract negotiations. In May 1979 the union agent, Stan Frank, sent to the Company's president, David Billion, a list of thirteen contract proposals. On June 5, the union negotiating committee asked Billion if he had any counterproposals. At the meeting, Billion stated that he wanted nothing to do with Frank or with labor unions in general: "As long as there was organized labor present, [Billion] wouldn't be." Billion further stated his belief that the employees did not need "outside help." On June 6, the negotiating committee again went to Billion. He repeated he would not meet with Frank and that the employees did not need union representation.

On July 3, Billion approached the shop steward and informed the steward that he was thinking about giving wage increases to the hourly employees. The steward replied that any discussion of wages should be with the negotiating committee. Later that day, Billion called in one of the hourly employees and told the employee he wanted to give him a 60 cents an hour increase. On July 13, Billion called in another hourly employee. Billion told the employee that contract negotiations would take a long time, that Frank did not care about the employees, and that it would be better if Billion could just talk to the "guys in the shop." Billion also told the employee that he wanted to give him a 60 cents an hour increase.

The administrative law judge (ALJ) found that the credible evidence supported a finding that the Company committed unfair labor practices by denigrating the un-

ion in front of employees, soliciting employees to withdraw from the union, and bargaining with individual employees. At oral argument, the Company conceded it could not successfully challenge the Board's findings concerning the three unfair labor practices that occurred prior to the start of negotiations on July 26, 1979.

The Company, however, challenges the Board's finding that the Company refused to bargain in good faith once negotiations began. The Company asserts that the Board based its findings of bad faith solely on the acceptability of the substantive terms of the wage proposals to the union. We disagree. To find bad faith the Board looks to the employer's conduct in the totality of the circumstances in which the bargaining took place. *NLRB v. Columbia Tribune Publishing Co.*, 495 F.2d 1384, 1391 (8th Cir.1974). The Board not only looks to the employer's behavior at the bargaining table but also to its conduct away from the table that may affect the negotiations. *Id.* Here, contrary to the Company's assertion, the Board based its finding of bad faith bargaining on a variety of factors: the Company's pre-negotiation hostility towards the union, the Company negotiator's lack of preparation at the negotiating sessions, the Company negotiator's failure to attend a scheduled session, the Company negotiator's premature announcement of impasse, the Company's offer of sham or frivolous wage proposals, and the Company's offer of a new method of wage computation. The Board did not find evidence of bad faith because the new method of wage computation probably would have resulted in a wage reduction. In fact, it is not an unfair labor practice or bad faith, in and of itself, for an employer, during negotiations, to ask that wages be reduced. Here, however, the Board found evidence of bad faith because the Company offered the proposal without adequate explanation or justification. *See NLRB v. Truitt Manufacturing Co.*, 351 U.S. 149, 153, 76 S.Ct. 753, 756, 100 L.Ed. 1027 (1956) ("refusal to attempt to substantiate a claim of inability to pay increased wages may support a finding of a failure to bargain in good faith").

■ The Company also challenges the Board's order of reinstatement with back pay to the employees who struck the Company on July 25, 1979. The Company argues that on August 20, 1979, it entered into a settlement agreement with the Board and that the settlement agreement converted the strike from an unfair labor strike to an economic strike. The Company's argument, however, ignores the fact that on October 17, 1979, the Board vacated the settlement agreement because the Company breached the agreement by continuing to engage in unfair labor practices. Where a company continues to commit unfair labor practices that prolong a strike, the company employees are unfair labor practice strikers. *NLRB v. Schweigers, Inc.,* 453 F.2d 255, 258 (8th Cir.1971). It is well settled that unfair labor practice strikers are entitled to reinstatement with back pay, even if replacements have been hired. *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956); *NLRB v. Columbia Tribune Publishing Co.,* 495 F.2d at 1392.

We conclude that the Board's findings are not contrary to the law and are supported by substantial evidence. Accordingly, we enforce the Board's order.