## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

NEURO AFFILIATES COMPANY, a joint venture between American Psychiatric Hospital of California and N.P.H.S., dba Woodview-Calabasa Hospital, Respondents.

No. 81–7746.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1982.

Decided March 24, 1983.

Elliott Moore, Washington, D.C., Roger W. Goubeaux, Los Angeles, Cal., for petitioner.

Timothy F. Ryan, McLaughlin & Irvin, Newport Beach, Cal., John P. Campbell, Ford, Harrison, Sullivan, Lowry & Sykes, Atlanta, Ga., for respondents.

Before GOODWIN and WALLACE, Circuit Judges, and EAST *, District Judge.

GOODWIN, Circuit Judge:

Woodview-Calabasas Hospital lost a decertification election during an economic strike. It then refused to bargain with the Hospital and Service Employees Union, contending that certain strikers who had "abandoned" employment should not have been eligible to vote. The hospital challenged the certification of the union as the collective bargaining unit. The board granted summary judgment for the union and applied to this court for enforcement of its order. The hospital resists enforcement on the ground that certain votes should not have been counted.

I

Strikers are presumed to retain an interest in their jobs. This presumption must be rebutted by objective evidence. *Bio-Science Laboratories v. N.L.R.B.*, 542 F.2d 505, 508 (9th Cir.1976). Acceptance of positions with other employers, even for higher salaries, does not necessarily rebut the presumption. *Pacific Tile & Porcelain*

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

Co., 137 N.L.R.B. 1358, 1359–1360 (1962). Striking employees remain eligible to vote in a decertification election unless they demonstrate "an intention to abandon an interest in their struck job." *Bio-Science Laboratories*, 542 F.2d at 508. Each employee whose vote is in dispute was eligible to vote unless she abandoned her interest in her struck job.

The hospital argues that the employees involved here accepted "permanent" employment elsewhere and thereby forfeited their right to vote. The debate over permanence sheds little light on the critical issue, intent to return to a struck job. In the context of strikes, substitute employment must be understood in view of the difficulty many strikers may encounter in finding explicitly temporary work. *See N.L.R.B. v. Kohler Company*, 351 F.2d 798, 802 (D.C.Cir. 1965) (because new employers forced striking employees to obtain release cards from struck employer, cards are not probative of intent to abandon struck job). The securing of work labeled "permanent" does not prove anything relevant in this case. *See Q–T Tool Co.*, 199 N.L.R.B. 500, 501–502 (1972) (striking employee can vote even though striker found "permanent" employment elsewhere and told second employer he had no intention of returning to struck job). In any work situation either party may wish to terminate the relationship at some future date. If the struck employer is free to replace strikers, and if these replacements can vote as part of the collective bargaining unit, it is not inappropriate that strikers be allowed to find employment elsewhere and still retain their statutory voting powers if they intend to resume the struck work. 29 U.S.C. § 159(c)(3). *Bio-Science Laboratories v. N.L.R.B.*, 542 F.2d at 507–508; *Pacific Tile and Porcelain Company*, 137 N.L.R.B. 1358 (1962).

We proceed to a consideration of each of the challenged votes. The standard of review is whether substantial evidence can be found in the record to support the Board's decision.

### Lujean Bogert

■ Woodview-Calabasas alleges that Bogert evidenced an intent to abandon her struck job by accepting a job at Camarillo State Hospital for higher pay. Woodview-Calabasas argues that because the new job was closer to her home and that because she subsequently transferred to another hospital within the state hospital system, she intended to abandon her job. Bogert, however, had placed herself on a preferential hiring list to be rehired at Woodview-Calabasas between the commencement of the strike and the July election. She was not offered a position before the election. She did not transfer to a new location until four-and-one-half months after the election. Post-critical date information cannot be used to color facts as they stood on the critical date. What happens after an election is of little consequence except as those events are indicative of a pre-election intent. *N.L.R.B. v. New England Lithographic Co.*, 589 F.2d 29, 37, (1st Cir.1978). *Accord N.L.R.B. v. Atkinson Dredging Company*, 329 F.2d 158, 164 (4th Cir.), *cert. denied*, 377 U.S. 965, 84 S.Ct. 1647, 12 L.Ed.2d 736 (1964). The proximity of the new job is not a controlling factor. *Q–T Tool Co.*, 199 N.L.R.B. at 501. There was evidence that Bogert told her new employer she wanted to work at Woodview-Calabasas "more than any place else." The Board's decision affirming the regional director's validation of Bogert's ballot was supported by substantial evidence. *N.L.R.B. v. New England Lithographic Co.*, 589 F.2d at 37.

### Lois Holcomb

■ Holcomb worked one year at Woodview-Calabasas as a licensed vocational nurse. Holcomb joined the strike, and shortly thereafter obtained employment at West Valley Community Hospital for a higher salary. The personnel director of West Valley testified that he had a policy against hiring short-term employees. However, an employer's policy against hiring temporary employees does not establish the employee's intent to remain at that job or foreclose a return to her struck job. Hol-

comb indicated on her application form that she still considered herself an employee of Woodview-Calabasas. After a month, she indicated to her new employer her intention to return to Woodview-Calabasas after the strike, and her dissatisfaction with her new position. In late 1978 and again in January 1979, Holcomb inquired at Woodview-Calabasas about reemployment. There was substantial evidence that Holcomb did not intend to abandon her employment with the hospital.

*Stephanie Klein*

Klein worked at Woodview-Calabasas for eight months as a licensed psychiatric technician. She participated in the strike and picketed for more than one month. She found part-time work at St. John's Hospital and Health Center. Woodview-Calabasas presented evidence that Klein had told others she had been unhappy at her old job. However, Klein expressed a preference for her old position at Woodview-Calabasas because it offered her more professional responsibility, more contact with physicians, and a different patient mix. Furthermore, there was evidence that she thought her new employment was short-term and that she wanted a short-term rather than a long-term position because it would allow her to return to the hospital after the strike was over. She declined to make a more long-term commitment to her new employer when she refused an offer of a new position at St. John's in September. Klein changed her mind and accepted the position in late October when she decided the strike situation appeared "more hopeless." Other than employment at St. John's, Woodview-Calabasas offers no evidence that Klein intended to abandon her struck job. There is substantial evidence to sustain the Board's determination that Klein had not abandoned her employment.

*Florence Ann McElroy*

McElroy worked at Woodview-Calabasas as a licensed psychiatric technician six months before the May 1, 1978, strike. She picketed for about three weeks before accepting a civil service position at Camarillo State Hospital. The Camarillo position offered higher pay and greater benefits. However, after finding employment at Camarillo State Hospital, McElroy placed her name on the preferential hiring list at Woodview-Calabasas and indicated that she wanted to return to work at that hospital. Furthermore, McElroy left Camarillo State Hospital in August, stating that she wanted to wait out the strike, that she did not want to become further involved with the children with whom she was working, and that she did not think she was state employee material. There is substantial evidence to affirm the determination that McElroy's vote should be counted.

*Kathleen Wissusik*

Wissusik worked at Woodview-Calabasas as a psychiatric aid and, at the same time, was enrolled in an undergraduate psychology degree program at California State University at Northridge. Wissusik attended classes at the University and worked at Woodview-Calabasas from two to five days a week. After participating in the strike and picketing for six weeks, Wissusik applied for and obtained a position at Northridge Hospital Foundation in mid-June 1978. She earned about 25 percent more in her new position than she had at her pre-strike position. Wissusik indicated at trial that the critical factor in her employment was the type of work experience she would get, apparently to complement her education. At Woodview-Calabasas, she worked a day shift during which she participated in patient group therapy. At Northridge, she worked the 11 p.m. to 7 a.m. shift when patients are asleep, giving her little opportunity for patient contact.

Wissusik is admittedly a close case. Nothing but her statement at the hearing indicated that she intended to return to Woodview-Calabasas. Her studies, which enhanced her earning capacity, pointed toward a career objective inconsistent with an intent to return. However, she gave plausible professional reasons for wishing to return. Woodview-Calabasas offers no evidence of her intent to abandon her struck job other than the fact of her new employ-

ment at higher pay. Such evidence alone is insufficient. *Cf. Nate Ben's Reliable, Inc.,* 219 N.L.R.B. 818 (1975) (new employment at higher pay plus refusal to return to struck job unless old employer matches new pay, condition which is improbable, constitutes abandonment). Given the variety of inferences that can be drawn from the conflicting evidence, we cannot say that the hearing examiner and Board erred in their assigned role as fact finders. 29 U.S.C. § 160(e). *N.L.R.B. v. Adrian Belt Co.,* 578 F.2d 1304, 1308, 1313 (9th Cir.1978).

*Debra Moers*

Moers' ballot was challenged on the ground that adjunctive therapy assistants had not been included in the bargaining unit stipulated in 1977. The 1977 stipulation was adopted without change for the June 20, 1978, election.

■ The Board is bound by the stipulation unless it violates applicable statutes or settled Board policy. *N.L.R.B. v. Mercy Hospitals of Sacramento, Inc.,* 589 F.2d 968, 972 (9th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 458 (1979). If, however, the stipulation is ambiguous, the Board can interpret the stipulation based on the intent of the parties. *Id.* The hospital argues that because the 1977 stipulation neither included nor excluded adjunctive therapy assistants it is not ambiguous. At the time the unit was stipulated by the union and the hospital in 1977, no adjunctive therapy assistants were employed by the hospital. In not raising the adjunctive therapy assistants issue in 1978, the hospital administrator claimed he thought adjunctive therapy assistants would be excluded. The union representative claimed he thought the adjunctive therapy assistants would be included in the stipulation. All classifications of employees other than adjunctive therapy assistants were either included or excluded from the stipulated unit.

■ Given that the status of the adjunctive therapy assistants was not determined by the stipulation and the conflicting claims of the bargaining parties, the Board was justified in looking beyond the agreement to the intent of the parties. *N.L.R.B.*

*v. Detective Intelligence Service, Inc.,* 448 F.2d 1022, 1025 (9th Cir.1971) (Board correct in modifying stipulated agreement to conform with intent of parties). There is substantial evidence to support the Board's finding that adjunctive therapy assistants shared a community of interest with certified occupational therapy assistants. Certified occupational therapy assistants and adjunctive therapy assistants differ only in that the former have been certified by the state. The two were functionally indistinguishable at Woodview-Calabasas. The hearing officer found that adjunctive therapy assistants were on the same wage scale as certified occupational therapy assistants and performed the same duties. The hearing officer noted that the hospital had included two of the four adjunctive therapy assistants at Woodview-Calabasas on the eligibility list, allegedly because the hospital administrators thought they were certified occupational therapy assistants. This confusion points to the difficulty of distinguishing adjunctive therapy assistants from certified occupational therapy assistants. We affirm the Board's decision to include the ballot of Debra Moers.

Over the years the Board has developed a policy which favors the right of striking workers to vote in elections which follow the hiring of replacement workers. *See e.g., C.H. Guenther & Son, Inc. v. N.L.R.B.,* 427 F.2d 983, 986–987 (5th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970); *Q–T Tool Co.,* 199 N.L.R.B. 500 (1972); *Pacific Tile and Porcelain,* 137 N.L.R.B. 1358 (1962). Strikers seeking employment elsewhere when the employer has hired replacements do not, without more, disqualify themselves from voting. Were the law otherwise, employers would have a blueprint for breaking unions. They could precipitate a strike, hire replacements, wait until the strikers were forced by necessity to seek work elsewhere, and then petition for a decertification election. This is precisely the behavior which 29 U.S.C. § 159(c)(3) was intended to prevent. *Bio-Science Laboratories v. N.L.R.B.,* 542 F.2d at 507–508.

We affirm the decision of the National Labor Relations Board in its entirety and grant enforcement of the order.